703 So.2d 771 (1997)
STATE of Louisiana
v.
Wilton GIROD.
No. 96-KA-660.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1997.
*773 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, for Plaintiff/Appellee.
Margaret S. Sollars, Thibodaux, for Defendant/Appellant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
Wilton Girod appeals his convictions of two counts of possession of stolen things and his sentencing as a fourth felony offender. We affirm the convictions, vacate the multiple offender sentencing, and remand the matter for resentencing.
The Jefferson Parish District Attorney filed a bill of information on January 25, 1995, charging the defendant and three other individuals, Juan Lastrapes, Avery Logue, and Reanna Mataya with numerous counts of theft, simple burglary, criminal damage to property and possession of stolen things. On February 13, 1996, the defendant proceeded to trial on two counts of possession of stolen things valued over $500.00 in violation of LSA-R.S. 14:69, counts nine and eleven of the twenty-two count bill of information. At the conclusion of the one-day trial, the jury returned a verdict of guilty as charged on the both counts. After denying the defendant's motion for new trial on June 6, 1996, the trial court sentenced the defendant to serve a term of eight years at hard labor on each count to run consecutively.
On September 6, 1996, the state dismissed the remaining charges in this case against the defendant, but reserved the right to reinstate the charges. On September 27, 1996, the state filed a multiple offender bill of information alleging the defendant to be a fourth felony offender. The trial court conducted a hearing on the multiple offender bill on October 25, 1996, and at the conclusion of the hearing, the court took the matter under advisement. On November 18, 1996, the trial court found the defendant to be a fourth felony offender, vacated the defendant's original sentence, and imposed a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant filed a timely motion to reconsider sentence, which the trial court denied on January 10, 1997.
FACTS
John Russo testified that on the night of November 7, 1994, his 1986 tan Ford F-250 pickup truck[1] was stolen from his business, Johnny's Crab Traps, which was located on Chef Mentuer Highway in New Orleans. He later received a telephone call from an anonymous caller reporting the location of his truck and Russo notified the police of this information.
Deputy Shane Taylor of the Jefferson Parish Sheriff's Office testified that he recovered Russo's pick-up truck at 2800 Mt. Kennedy, an apartment complex located in Jefferson Parish. When Russo retrieved his truck, he noticed that the steering column was broken, the radio was "ripped out" and his rack used to deliver crab traps was missing.
Robert Knapp, branch manager of Beard Equipment Company in Mobile, Alabama, testified that a John Deere lawn mower was stolen from Beard Equipment Company over the weekend of November 12-13, 1994. He identified an invoice for the lawn mower showing that Beard Equipment Company received it on November 8, 1994, and the invoice also showed that it was purchased for the price of $2,009.20.
Juan Lastrapes testified that he, Avery Logue, and the defendant were involved in the theft of a tan Ford F250 pick-up truck from Johnny's Crab Traps in New Orleans. Lastrapes stated that the defendant, whom he knew as "Jerome," entered the premises *774 of Johnny's Crab Traps, "hot wired" the truck and drove it back to the defendant's apartment on Destrahan Avenue in Jefferson Parish.
Lastrapes also testified that he, Logue, the defendant and another subject named "Wayne" drove to Mobile, Alabama in Logue's car. Lastrapes stated that the defendant told Logue to pull into the driveway of a business which sold John Deere equipment. The defendant exited the car and cut the locks on the gate. There was a trailer loaded with a large lawn mower inside the gate. Defendant hitched the trailer to a truck inside the gate, "hot wired" the truck, and drove the truck out of the gate. Lastrapes next saw the lawn mower parked across the street from defendant's apartment.
When Reagan testified that in November of 1994, the defendant, whom he knew as "Baldy," offered to sell him a beige Ford 250 pickup truck, which defendant had driven to his residence located in Gretna, Louisiana. Reagan stated that he did not buy the truck, but that he did purchase a John Deere lawn mower from the defendant.
Lieutenant Toca of the Jefferson Parish Sheriff's Office testified that he conducted a search of Reagan's residence after obtaining his consent, and he found the lawn mower in the shed.
ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, the defendant contends that the trial court improperly allowed Robert Knapp to testify about damage done to Beard Equipment Company's fence as well as to testify about the theft of a trailer that occurred when the John Deere lawn mower was stolen. The defendant specifically complains of the following testimony elicited by the prosecutor during the direct examination of Robert Knapp:
Q: Were you employed with Beard Equipment Company in November of 1994?
A: Yes, I was.
Q: All right. And did you become aware of a theft that occurred from the property?
A: Yes, I
Q: Theft of Equipment.
A: Yes, I did.
Q: Was there any physical damage done to the property at Beard Equipment that you noticed?
A: Yes. A chain was cut that holds together we have a chain fence that surrounds the building, and the chain
The defendant objected to this testimony and requested a mistrial which the trial court denied.
The following exchange occurred later during the direct examination of Mr. Knapp:
Q: Thank you. Now, I believe you said that a trailer was also taken from the property?
A: Yes.
Q: I show you what I'm marking as State's Exhibit Five.
MR. AMSTUTZ (defense counsel):
Judge, I'm going to object to the trailer on the basis of relevance. We're not on trial for
THE COURT:
Come on up, counsel.
(The following conversation occurred at the Bench, out of earshot of the jury.)
MS. McELWEE (prosecutor):
The trailer was how they stole the lawn mower. They loaded it on there.
MR. AMSTUTZ:
Once again, Judge, that's evidence of another crime, and I'm going to again move for a mistrial.
THE COURT:
I think that is, and the Court's going to instruct the jury to disregard the last question, and don't get into it any further.
(End of Bench Conference)
THE COURT:
All right, jury, I'm going to ask that you disregard that last question, please.
The defendant argues that the testimony constituted an impermissible reference to other crimes and that a mistrial was mandated *775 by LSA-C.Cr.P. art. 770. That article provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
As a general rule, because a state witness is not a "court official" within the meaning of LSA-C.Cr.P. art. 770, the provisions of LSA-C.Cr.P. art. 771, rather than LSA-C.Cr.P. art. 770, would apply. However, the jurisprudence reflects that an impermissible reference to another crime deliberately elicited by the prosecutor would be imputable to the state and would also mandate a mistrial. The reference must be to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Thomas, 96-464 (La.App. 5 Cir. 11/14/96), 685 So.2d 261.
In the instant case, the prosecutor deliberately elicited the testimony regarding the fence and trailer and thus the testimony was imputable to the state. However, even assuming arguendo that the testimony constituted a reference to another crime, we find that the testimony was admissible as res gestae.
The concept of res gestae is embodied in LSA-C.E. art. 404(B)(1) and it provides in pertinent part:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts ... may, however, be admissible ... when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The testimony concerning the trailer and the fence constituted an integral part of the crime of possession of stolen things considering that the testimony established how the defendant came into possession of the stolen lawn mower. As such, the testimony was admissible as res gestae and a mistrial was not mandated.
Moreover, assuming arguendo that the testimony was inadmissible, a mistrial is not automatically warranted. In State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332, the Louisiana Supreme Court stated the following regarding LSA-C.Cr.P. art. 770(2):
This Court has previously held that violation of this rule is per se prejudicial and a substantial denial of the defendant's statutory rights, reasoning that the effect on a jury of evidence of inadmissible other crimes evidence cannot be determined. See State v. Brown, 428 So.2d 438 (La. 1983). This is so even where a defendant fails to move for a mistrial, as required, as long as an objection is entered. See State v. Duke, 362 So.2d 559 (La.1978); State v. Hamilton, 356 So.2d 1360 (La.1978).
We reject this per se rule as it impacts appellate review. Although Article 770 is couched in mandatory terms, this is a rule for trial procedure. Its operation depends upon motion by the defendant. The defendant may even waive its mandatory mistrial effect by requesting an admonition only. We find instead that the mandatory language of LSA-C.Cr.P. art. 921 provides the proper scope for appellate review; i.e., a judgment or ruling shall not be reversed due to error unless the error affects substantial rights of the accused. (Footnote omitted)
* * * * * *
Based on the foregoing, we hold that the introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis. Insofar as State v. Brown, supra, and other cases have held *776 the admission of inadmissible other crimes evidence is per se prejudicial and not subject to harmless error review, they are overruled.
The analysis for determining harmless error is whether the verdict actually rendered in this case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), on remand, 623 So.2d 1315 (La.1993), appeal after remand, 96-0593 (La.App. 4 Cir. 1/29/97), 688 So.2d 1245, writ denied, 97-0538 (La.9/5/97), 700 So.2d 504;State v. Johnson, supra. Considering the testimony of Lastrapes and Reagan, we find that any error in admitting the testimony was harmless.
Accordingly, we find that this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment, the defendant contends that the evidence at trial was legally insufficient to support his convictions of possession of stolen things. The standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445.
The defendant does not assert that the state failed to prove any of the elements of the offenses; rather the defendant argues that the testimony of Reagan and Lastrapes was "presumptively unreliable" considering that they testified as state witnesses in exchange for favorable "deals".
Reagan testified that he had three prior convictions and that the state agreed not to bring charges against him in return for his testimony. He also testified that he was not promised any material thing in return for his testimony and that his testimony was truthful.
Lastrapes testified that he had pled guilty to all of the charges brought against him along with the defendant, including burglary, possession of stolen things, and theft. He admitted that he was sentenced to serve six months in Parish Prison and received five years active probation as a penalty for the crimes to which he had pled guilty. He also admitted that in addition to pleading guilty to those charges, he had a prior conviction. He further testified that he was not promised any special treatment in exchange for his testimony.
Although the defendant is of the opinion that Reagan and Lastrapes were not credible, the jury apparently found their testimony credible. It is within the jury's sound discretion to accept or reject in whole or in part the testimony of any witness and the credibility of witnesses will not be reweighed on appeal. State v. Zeno, 610 So.2d 268 (La.App. 5 Cir.1992).
Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment, the defendant contends the trial court erred in adjudicating him to be a fourth felony offender for two reasons. First, defendant argues that the trial court improperly found him to be a fourth felony offender because the state failed to introduce the Boykin transcripts to prove that he properly waived his rights when he pled guilty to the three predicate convictions. Second, the defendant complains that trial court should not have admitted the arrest registers and "pen pack" because the documents were inadmissible hearsay. However, the defendant failed to raise these objections either prior to or at the multiple offender proceedings.
LSA-R.S. 15:529.1(D)(1)(b) states that any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence. Consequently, the defendant has not preserved this issue for review on appeal. See State v. Kittlin, 97-92 (La.App. 3 Cir. 6/4/97), 695 *777 So.2d 1137; State v. Washington, 96-656 (La. App. 3 Cir. 1/15/97), 687 So.2d 575.
Accordingly, this assignment lacks merit.

DEFENDANT'S PRO SE ASSIGNMENT OF ERROR
The defendant contends that the evidence was insufficient to support his adjudication as a fourth offender because the state did not establish that the discharge date of his first predicate conviction fell within the cleansing period. However, the defendant did not make a contemporaneous objection to the lack of a discharge date.
In State v. Jones, 94-0071 (La.App. 4 Cir. 3/29/95), 653 So.2d 746, the court held that a defendant's failure to contemporaneously object to the lack of a discharge date for the prior offense which was used to enhance his sentence as a multiple offender precludes review of his claim on appeal.
Because the defendant failed to make a contemporaneous objection, this issue has not been preserved for review on appeal. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The defendant contends that his mandatory sentence of life imprisonment constitutes an excessive sentence.[2] However, we will not address the merits of this assignment, having found the following error patent regarding the sentencing.
After adjudicating the defendant to be a fourth felony offender, the trial court imposed a mandatory life sentence in accordance with the terms of LSA-R.S. 15:529.1(A)(1)(c)(ii) as amended by Act 1995, No. 1245, § 1, effective August 15, 1995; however, the version of LSA-R.S. 15:529.1(A)(1)(c)(ii), which was in effect at the time the offenses were committed, provided as follows:
If the fourth or subsequent felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence. (emphasis added)
In the instant case the fourth felony, the underlying conviction of possession of stolen things valued at over $500.00[3], is not (1) a crime of violence, (2) a violation of the Uniform Controlled Dangerous Substances Law nor (3) punishable by more than 12 years. Therefore, LSA-R.S. 15:529.1(A)(1)(c)(ii) was not applicable; rather LSA-R.S. 15:529.1(A)(1)(c)(i)[4] was applicable and it provided for a sentencing range of 20 years to life imprisonment with parole eligibility.
Because the trial court may have imposed a different sentence had she not thought that a life sentence was mandatory, we vacate the sentence and remand the case for resentencing. See State v. Slayton, 499 So.2d 549 (La.App. 2 Cir.1986).

ERROR PATENT DISCUSSION
We have reviewed the record for errors patent and note the following errors: When imposing the sentence as a fourth felony offender, the trial court vacated the previous sentence and imposed an enhanced sentence without any specification regarding the two counts of possession of stolen things.[5] How ever, *778 because we are vacating the multiple offender sentence, we pretermit discussion of this issue.
For the foregoing reasons, the defendant's convictions are affirmed, but the multiple offender sentence is vacated. The case is remanded for resentencing.
CONVICTIONS AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.
NOTES
[1] It was stipulated at trial that the truck had a value of more than $500.00.
[2] The defendant in his pro se assignment of error also contended that the sentence was excessive.
[3] LSA-R.S. 14:69(B)(1) provides for a sentence of not more than 10 years.
[4] LSA-R.S. 15:529.1(A)(1)(c)(i) provided as follows:

(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more that his natural life....
[5] Because the two counts arose from different criminal episodes, the defendant may have been sentenced as a multiple offender on both counts. State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991).